IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

HARPER PARIS,                            §
                                         §
        Plaintiff,                       §
                                         §
V.                                       §        No. 3:26-cv-2172-K-BN
                                         §
McCARTHY BURGESS & WOLFF;                §
TRANS UNION LLC; DK                      §
CONSULTING INC., JEFFERSON               §
CAPITAL INC., and ABSOLUTE               §
RESOLUTIONS CORPORATION,                 §
                                         §
        Defendants.                      §

## STANDING ORDER REGARDING USE OF ARTIFICIAL INTELLIGENCE

United States District Judge Ed Kinkeade referred this case to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. *See* Dkt. No. 3.

"Legal research has improved over time, going from the use of digest books to online databases like Lexis and Westlaw."[1]

Now, litigators – attorneys and *pro se* parties (that is, unrepresented or self-represented parties) alike – "are beginning to make the jump from those databases into the world of Artificial Intelligence ('AI')."[2]

"AI is a powerful tool, that when used prudently, provides immense benefits."[3]

---

[1] *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 492-93 (D. Wyo. 2025).

[2] *Id.* at 493.

[3] *Ferris v. Amazon.com Servs., LLC*, 778 F. Supp. 3d 879, 880 (N.D. Miss. 2025).

AI also "may ultimately prove a helpful tool to assist *pro se* litigants in bringing meritorious cases to the courts," and, "[i]n that way, [AI] has the potential to contribute to the cause of justice."[4]

And, so, "[t]he Court is not opposed to the use of AI and recognizes that '[w]hen done right, AI can be incredibly beneficial for attorneys and the public.'"[5]

But, along with its potential benefits, using AI involves risks. And "accessing any beneficial use of artificial intelligence requires carefully understanding its limitations."[6]

For example, "[t]he legal profession has been cautious to make a head-first dive [into AI] partly because of a concept referred to as 'AI Hallucinations,'" which occur "when an AI database generates fake sources of information. To explain how this occurs: 'AI models are trained on data, and they learn to make predictions by finding patterns in the data. However, the accuracy of these predictions often depends on the quality and completeness of the training data. If the training data is incomplete, biased, or otherwise flawed, the AI model may learn incorrect patterns, leading to inaccurate predictions or hallucinations.'"[7]

"It is no secret that generative AI programs are known to 'hallucinate'

---

[4] *Morales v. Land Rover Cherry Hill*, No. 3:25-cv-544 (VDO), 2025 WL 1249616, at *3 (D. Conn. Apr. 30, 2025).

[5] *Bevins v. Colgate-Palmolive Co.*, No. CV 25-576, 2025 WL 1085695, at *7 n.10 (E.D. Pa. Apr. 10, 2025) (quoting *Wadsworth*, 348 F.R.D. at 493).

[6] *Morales*, 2025 WL 1249616, at *3.

[7] *Wadsworth*, 348 F.R.D. at 493 (cleaned up).

nonexistent cases, and with the advent of AI, courts have seen a rash of cases in which both counsel and *pro se* litigants have cited such fake, hallucinated cases in their briefs."[8] And "[t]hese hallucinations are not unique to the legal profession, as many scientific fields experience the same issue."[9]

Litigants in this district must also be aware that a local civil rule requires that the use of Generative Artificial Intelligence be disclosed:

1. A brief prepared using generative artificial intelligence must disclose this fact on the first page under the heading "Use of Generative Artificial Intelligence." If the presiding judge so directs, the party filing the brief must disclose the specific parts prepared using generative artificial intelligence.
2. "Generative Artificial Intelligence" means a computer tool (whether referred to as "Generative Artificial Intelligence" or by another name) that is capable of generating new content (such as images and text) in response to a submitted prompt (such as a query) by learning from a large reference database of examples.
3. A party who files a brief that does not contain the disclosure required by subsection (f)(1) of this rule certifies that no part of the brief was prepared using generative artificial intelligence.

N.D. TEX. L. CIV. R. 7.2(f).

And, while the Court will not impose obligations as to litigants' using AI beyond those that Local Civil Rule 7.2(f) requires, all parties are cautioned that relying on AI without verifying the accuracy of the information it generates – like any other shoddy research method from other sources or tools – implicates Federal Rule of Civil Procedure 11, "the central purpose of [which] is to deter baseless filings in

---

[8] *Sanders v. United States*, 176 Fed. Cl. 163, 169 (2025) (cleaned up).
[9] *Wadsworth*, 348 F.R.D. at 493 (cleaned up).

district court and thus … streamline the administration and procedure of the federal courts"[10] and which "applies fully and completely to actions filed by *pro se* litigants."[11]

Rule 11 provides, in part, that, "[b]y presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... the claims, defenses, and other legal contentions are warranted by existing law."[12]

And "[c]onfirming a case is good law is a basic, routine matter and something to be expected from a practicing attorney,"[13] especially because "[c]arelessness, good faith, or ignorance are not an excuse for submitting materials that do not comply with Rule 11."[14]

"To start with the obvious, an attorney [or *pro se* party] who submits fake cases

---

[10] *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (cleaned up).

[11] *Hick v. Bexar Cnty., Tex.*, 973 F. Supp. 653, 687 (W.D. Tex. 1997) (cleaned up; collecting cases), *aff'd*, 137 F.3d 1352 (5th Cir. 1998); *see also Houston v. Sw. Airlines*, No. 3:17-cv-2610-N-BT, 2020 WL 774408, at *1 (N.D. Tex. Feb. 18, 2020) ("Although the Rule 11 standard applies equally to *pro se* parties as it does to attorneys, a court has 'sufficient discretion to take account of the special circumstances that often arise in *pro se* situations.'" (quoting FED. R. CIV. P. 11 advisory committee's notes)).

[12] FED. R. CIV. P. 11(b)(2).

[13] *Mid Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC*, No. 2:24-cv-326-JPH-MJD, 2025 WL 574234, at *2 (S.D. Ind. Feb. 21, 2025), *rec. adopted*, 2025 WL 1511211 (S.D. Ind. May 28, 2025).

[14] *Attaway v. Ill. Dep't of Corr.*, No. 23-cv-2091-DWD, 2025 WL 1101398, at *2 (S.D. Ill. Apr. 14, 2025) (cleaned up).

clearly has not *read* those nonexistent cases, which is a violation of Rule 11 of the Federal Rules of Civil Procedure."[15] So, in the context of AI, "[i]t is one thing to use AI to assist with initial research, and even non-legal AI programs may provide a helpful 30,000-foot view. It is an entirely different thing, however, to rely on the output of a generative AI program without verifying the current treatment or validity – or, indeed, the very existence – of the case presented."[16]

"And because artificial intelligence synthesizes many sources with varying degrees of trustworthiness, reliance on artificial intelligence without independent verification renders litigants" – attorneys and *pro se* parties alike – "unable to represent to the Court that the information in their filings is truthful."[17]

"That the AI-generated excerpts appeared valid to [an attorney or *pro se* party] does not relieve him of his duty to conduct a reasonable inquiry" into the law,[18] because "[a] fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law. [Instead, a]n attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system."[19]

---

[15] *Benjamin v. Costco Wholesale Corp.*, 779 F. Supp. 3d 341, 343 (E.D.N.Y. 2005).

[16] *Mid Cent.*, 2025 WL 574234, at *2.

[17] *Morales*, 2025 WL 1249616, at *3.

[18] *Mid Cent.*, 2025 WL 574234, at *3

[19] *Nguyen v. Savage Enters.*, No. 4:24-cv-815-BSM, 2025 WL 679024, at *1 (E.D. Ark. Mar. 3, 2025) (cleaned up; quoting *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023)); *accord Ford v. Bank of N.Y. Mellon, Tr., for CWABS, Inc. Asset-Backed Certificates, Series 2007-2*, No. 24-50053, 2025 WL 1008537, at *1 n.1 (5th Cir. Apr. 4, 2025) (per curiam); *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024).

That is, "briefing built on AI-generated cases that stand for legal propositions in direct contravention of actual case law is the epitome of baseless," and, "[w]hile courts afford *pro se* litigants considerable leeway, that leeway does not relieve *pro se* litigants of their obligation under Rule 11 to confirm the validity of any cited legal authority."[20]

And, "[w]hen used carelessly, [AI] produces frustratingly realistic legal fiction that takes inordinately longer to respond to than to create. While one party can create a fake legal brief at the click of a button, the opposing party and court must parse through the case names, citations, and points of law to determine which parts, if any, are true. As AI continues to proliferate, this creation-response imbalance places significant strain on the judicial system."[21]

Because "[f]ake citations waste both the Court's and the opposing party's time and resources," "[t]he imposition of sanctions against parties who submit fake citations is also not uncommon."[22]

---

[20] *Sanders*, 176 Fed. Cl. at 169 (cleaned up); *accord Nichols v. Walmart, Inc.*, No. CV 124-236, 2025 WL 1178592, at *2 (S.D. Ga. Apr. 23, 2025) ("Although courts 'make some allowances for the *pro se* Plaintiff's failure to cite to proper legal authority,' courts do not make allowances for a Plaintiff who cites to fake, nonexistent, misleading authorities." (quoting *Morgan v. Cmty. Against Violence*, No. 23-CV-353, 2023 WL 6976510, at *7 (D.N.M. Oct. 23, 2023), in turn quoting *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013))).

[21] *Ferris*, 778 F. Supp. 3d at 880-81.

[22] *Gordon v. Wells Fargo Bank N.A. Inc.*, No. 5:24-cv-388 (CAR), 2025 WL 1057211, at *3 (M.D. Ga. Apr. 8, 2025) (cleaned up); *cf. Attaway*, 2025 WL 1101398, at *3 (explaining that the fact that a party is *pro se* and "not a licensed attorney" "is not an excuse for leniency with Rule 11" but that, in this case, "the Court will not issue a monetary sanction today, but if Plaintiff is found to have committed similar

In sum, "the use of artificial intelligence must be accompanied by the application of actual intelligence in its execution."[23] And, so, attorneys and self-represented litigants should consult this Standing Order when considering the use of AI in court filings and, for any brief prepared using generative artificial intelligence, must comply with Northern District of Texas Local Civil Rule 7.2(f).

And, as set out in this Standing Order, "[m]odern generative AI may be a new technology, but the same sanctions rules apply, and the rules we have are well equipped to handle these types of cases."[24] So, just for example, should the use of generative AI contribute to presenting the Court with nonexistent legal authority, that use of a novel technology will not shield an attorney or self-represented litigant from sanctions under established authority, such as Rule 11 or, if necessary and

---

violations in any other case or if he commits future violations of this nature in any case, he may face monetary sanctions for his conduct"); *McKeown v. Paycom Payroll LLC*, No. CIV-24-301-PRW, 2025 WL 978221, at \*9 (W.D. Okla. Mar. 31, 2025) ("[B]ecause the Court recognizes the limitations faced by a *pro se* plaintiff, including the inability to access legal research databases to check the veracity of citations, the Court is unwilling to dismiss Plaintiff's claims with prejudice as a sanction at this time.").

[23] *Mid Cent.*, 2025 WL 574234, at \*4; *accord* In re: Use of Generative Artificial Intelligence in Court Filings, S.D. TEX. GEN. ORDER 2025-04 (May 7, 2025) ("Rule 11 of the Federal Rules of Civil Procedure requires that an attorney or self-represented litigant certifies their claims, defenses, and other legal contentions are warranted by existing law and the factual contentions have evidentiary support. Attorneys and self-represented litigants are cautioned against submitting to the Court any pleading, written motion, or other paper drafted using generative artificial intelligence (e.g., ChatGPT, Harvey.AI, generative AI services) without checking the submission for accuracy as certain technologies may produce factually or legally inaccurate content and should never replace the lawyer's independent legal judgment.").

[24] *Fletcher v. Experian Info. Solutions, Inc.*, 168 F.4th 231, 239 (5th Cir. 2026).

justified, the Court's inherent powers.[25]

SO ORDERED.

DATE: July 14, 2026

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

---

[25] *See id.* at *6 (confronted with AI hallucinations, observing that a court has "the 'inherent power to impose sanctions for abuse of the judicial process,'" considering that "[s]ubmitting a brief riddled with fabricated quotations and assertions is such an abuse" – an abuse that is compounded should an attorney then "mislead[] the court as to the source of [the] errors," which would, accordingly, "further justif[y] sanctions under [a court's] inherent powers" (quoting *Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 315 (5th Cir. 2020), then citing *Park*, 91 F.4th at 615; *Ben E. Keith Co. v. Dining All., Inc.*, 80 F.4th 695, 703 (5th Cir. 2023))); *see also Maguire Oil Co. v. City of Hous.*, 143 F.3d 205, 209 (5th Cir. 1998) ("[B]efore imposing sanctions under its inherent power, a court must make a specific finding that the sanctioned party acted in 'bad faith.'" (citation omitted)).